IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DEON C. STAFFORD                :    CIVIL ACTION
                                  :
        v.                  :
                                    :
DONALD T. VAUGHN (SUPERINTENDENT):
MANNY ARROYO (DEPUTY         :
SUPERINTENDENT), DAVID        :
DIGUGLIELMO (DEPUTY          :
SUPERINTENDENT), GEORGE HILTNER :
(SUPERVISOR MAINTENANCE), MRS.   :
KNAUER (ADMINISTRATION       :
SUPERVISOR), MR. MCSURDY (FIRE   :
INSPECTOR SUPERVISOR)       :    NO.  02-3790

**ORDER**

      AND NOW, this    day of        , 2004, it is ORDERED that, upon consideration of

Commonwealth Defendants' Motion for Summary Judgment, and Plaintiff's Response thereto,

said Motion for Summary Judgment is GRANTED.  Judgment is entered in favor of

Commonwealth defendants and against plaintiff.


                                    BY THE COURT

                                  _____

                                  JAN E. DUBOIS,     J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEON C. STAFFORD | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| DONALD T. VAUGHN (SUPERINTENDENT) | : | |
| MANNY ARROYO (DEPUTY | : | |
| SUPERINTENDENT), DAVID | : | |
| DIGUGLIELMO (DEPUTY | : | |
| SUPERINTENDENT), GEORGE HILTNER | : | |
| (SUPERVISOR MAINTENANCE), MRS. | : | |
| KNAUER (ADMINISTRATION | : | |
| SUPERVISOR), MR. MCSURDY (FIRE | : | |
| INSPECTOR SUPERVISOR) | : | NO.  02-3790 |

**COMMONWEALTH DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Commonwealth defendants move this Court to grant summary judgment in their favor, pursuant to Fed.R.Civ.P. 56(c), incorporate the attached memorandum of law and exhibits as noted in the Table of Exhibits, and state:

1.  Plaintiff Deon C. Stafford, inmate DD-4637, is an inmate currently incarcerated at the State Correctional Institution ("SCI") at Graterford.

2.  Moving defendants are all Department of Corrections employees at SCI-Graterford: Superintendent Vaughn, Deputy Superintendent Arroyo, Deputy Superintendent DiGuglielmo, Facilities Maintenance Manager Hiltner, Corrections Health Care Administrator Knauer, and Fire Inspector Supervisor McSurdy (retired) ("Commonwealth defendants").

3.  The *pro se* complaint, pursuant to 42 U.S.C. § 1983, requests compensatory damages and injunctive relief for alleged violations of the inmate's Eighth Amendment rights.

4.  Stafford's claim appears to be barred by the statute of limitations.

5.  Stafford has failed to exhaust his administrative remedies under the Prison Litigation Reform Act.

6.  Stafford's Eighth Amendment rights were not violated due to his fall on the steps or the medical attention he was provided.

7.  The complaint shows that the Commonwealth defendants lacked the personal involvement required under section 1983 claims.

8.  Commonwealth defendants, in their individual capacities, are entitled to qualified immunity from damages.

9.  Stafford has raised no genuine issue of material fact.

WHEREFORE, this Court should grant Commonwealth defendants' motion for summary judgment as set forth in the proposed order.

GERALD J. PAPPERT
ATTORNEY GENERAL

BY:   _/s/ Patrick J. McMonagle_____
Patrick J. McMonagle
Deputy Attorney General
Identification No. 83890

Office of Attorney General                     Susan J. Forney
21 S. 12th Street, 3rd Floor                   Chief Deputy Attorney General
Philadelphia, PA  19107-3603                   Chief, Litigation Section
Telephone No. (215) 560-2933
Fax:  (215) 560-1031

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEON C. STAFFORD | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| DONALD T. VAUGHN (SUPERINTENDENT) | : | |
| MANNY ARROYO (DEPUTY | : | |
| SUPERINTENDENT), DAVID | : | |
| DIGUGLIELMO (DEPUTY | : | |
| SUPERINTENDENT), GEORGE HILTNER | : | |
| (SUPERVISOR MAINTENANCE), MRS. | : | |
| KNAUER (ADMINISTRATION | : | |
| SUPERVISOR), MR. MCSURDY (FIRE | : | |
| INSPECTOR SUPERVISOR) | : | NO.  02-3790 |

**COMMONWEALTH DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

**I.    RELEVANT PROCEDURAL SUMMARY**

Plaintiff Deon C. Stafford, inmate DD-4637, is an inmate currently incarcerated at the

State Correctional Institution ("SCI") at Graterford.  Moving defendants are all Department of

Corrections employees at SCI-Graterford: Superintendent Vaughn, Deputy Superintendent

Arroyo, Deputy Superintendent DiGuglielmo, Facilities Maintenance Manager Hiltner,

Corrections Health Care Administrator Knauer, and Fire Inspector Supervisor McSurdy (retired)

("Commonwealth defendants").

The *pro se* complaint filed pursuant to 42 U.S.C. § 1983, requests compensatory damages

and injunctive relief for alleged violations of the inmate's Eighth Amendment rights.  Now, after

taking plaintiff's deposition and responding to his discovery requests, Commonwealth

defendants move for summary judgment.

**II.    STATEMENT OF UNDISPUTED FACTS**

In 1996, while incarcerated in Dauphin County Prison, plaintiff injured his tail bone.

Deposition of Deon C. Stafford, 7/704, at 34:11-20.  Afterwards, he was transferred to Berks

County Prison and received treatment for his injury at a hospital in Reading.  *Id*. at 35:1-3.  The treatment consisted of an x-ray, pain medication and six months of physical therapy.  *Id*. at 35:4-6.  Plaintiff was very satisfied with this treatment.  *Id*. at 34-35.

Later in 1996, Plaintiff arrived at SCI-Graterford.  *Id*. at 11:20; *see also* Exhibit C1. Prior to July 20, 2000, plaintiff complained to several SCI-Graterford officials that a flight of stairs behind SCI-Graterford's A-Block had been decayed for "some time".  *Id*. at 12:3-5, 13:8-9, 14:7-9, 22-23, 37:15-22.  Superintendent Vaughn, Deputy Superintendent Arroyo, Deputy Superintendent DiGuglielmo, and Fire Inspector McSurdy were aware of this condition either through complaints, work orders or inspection.  *Id*.  Facilities Maintenance Manager Hiltner became aware of the condition of the flight of stairs behind A-Block within three (3) months of July 20, 2000.  Stafford Dep. at 15:1-2.  As a result of the complaints, work orders, and/or inspections, the stairs were reinforced, welded back together, or re-treaded, but not replaced prior to July 20, 2000.  Declaration of Facilities Maintenance Manager George Hiltner at ¶¶ 6, 10, 13.

SCI-Graterford was built in 1929.  *Id*. at ¶ 6.  Prior to the 1950s, stairs were constructed by using either bolts or rivets.  *Id*.  After the invention of welding in the 1950s, stair construction was changed to welded construction.  *Id*.  Therefore, the stairs on housing blocks A through E were bolted together.  *Id*.  If a bolt broke, and the step dropped, the steps were welded back into place and not replaced.  *Id*.  Over approximately seventy (70) years, the stairs in the housing units were subjected to significant stress from equipment being dragged over them, flooding, and general use by inmates and corrections personnel.  *Id*. at ¶ 7.  In September of 1997, several of the stairs in D-Block were welded and received new treads.  *Id*.  After this project was completed, it was suggested that every flight of stairs in housing units A through E be evaluated

4

for possible replacement. *Id*. Therefore, in 1998, a mason was directed to evaluate the condition of the stairs in housing units A through E. *Id*.

After the mason determined that most of the stairwells were "worn", corrections officials decided to replace each "worn" stairwell in housing units A through E. *Id*. at ¶ 8; *see* Exhibit B1. Each of the five (5) housing units A through E has two (2) sets of staircases in the back of the unit and two (2) more in the center of the unit. *Id*. The number of staircases in the front of those units varies. *Id*. A-Block has three (3) in the front of the unit, as does B-Block and C-Block. *Id*. D-Block and E-Block have only one (1) staircase in the front of the unit because those blocks are on ground level. *Id*. Therefore, there is a total of thirty-one (31) sets of stair cases in housing units A-E. *Id*. Of those thirty-one (31) sets, twenty-four (24) were designated for replacement. *Id*. The seven (7) "sets" of stairs that were not designated for replacement differed from the others not only in their condition, but in their construction and size. *Id*. In other words, four (4) of the seven (7) sets are fifty-foot wide steps (on A, B & C) and three (3) more are short flights, consisting of less than four steps each (also on A, B & C). *Id*. The short flights were, in fact, welded. *Id*.

The project to replace the designated twenty-four (24) sets of stairs on the five housing units A through E was prioritized: the block with the worst stairs was scheduled to be replaced first, which was E-Block. *Id*. at ¶ 9. This project was finished by September 2000. *Id*. The D-Block stairs were replaced by November 2000. *Id*. The A-Block stairs were replaced in February 2001. *Id*. Since the 1998 decision to replace the designated stairs, each designated set of stairs in the A through E housing units have been replaced. *Id*. The cost for replacing the A-Block stairs alone exceeded $8,000. *Id*.; *see also* Exhibit B8.

Prior to February 2001, when the A-Block stairs were replaced, there had been

5

occasional repair work done pending replacement. *Id*. at ¶¶ 6, 10, 13. A step was welded in April 1997, treads were repaired on two steps on a flight in the front of the block in early 1998, and a tilted step on the same flight was straightened out in April 1998. *Id*.; *see also* Exhibits B2-B7.

However, on July 20, 2000, six months prior to the replacement of the stairs in the back of A-Block, Stafford was walking down this flight of stairs when one of the steps collapsed beneath him. Stafford Dep. at 25:16. As a result, Stafford fell and sustained injuries to his neck and back. *Id*. at 26:8-14. Stafford was not the first person to fall on the stairs on A-Block. *See* Declaration of Corrections Health Care Administrator ("CHCA") Julia Knauer at ¶ 11. From December 1998, until Stafford's accident on July 20, 2000, there were fifty-three documented slip/falls around the Institution: six (6) of which occurred on the A-Block stairs, including Stafford's. *Id*. Inmate John Hall, CS-2352, accounted for two of the six falls. *Id*. There is only a Medical Incident/Injury Report for five of the six falls. *Id*. Evidently, inmate Jabari Jackson, BZ-6266, did not seek medical attention after his fall. *Id*. With respect to the Medical Incident/Injury Reports, only Stafford's indicates that the fall was attributable to a condition of the stairs. *Id*. The other four indicate that the inmate fell and/or slipped up or down the steps. *Id*.

After Stafford fell, the next thing he remembers is that he was getting "strapped in something, some kind of device." Stafford Dep. at 26:17-18. When he awoke, Stafford found himself in "medical, they were sticking a pin in [his] foot." *Id*. at 18-20. He recalls that Dr. Beken and an unidentified doctor were arguing about the extent of his injury and the best course of care. *Id*. at 26:22-24, 27:1-8. While Dr. Beken recommended that Stafford remain in the dispensary for x-rays, the other doctor favored taking Stafford to a hospital. *Id*. at 9-19. Dr.

Beken prevailed.

The x-ray was negative, indicating no obvious abnormality, fracture or foreign body. Exhibit C6. After the x-ray, Stafford remained in the infirmary overnight and received pain medication. Stafford Dep. at 28:5-10. Dr. Beken examined Stafford the following day, indicated that Stafford was well enough to go back to A-Block, and increased his Motrin prescription and muscle relaxers. *Id*. at 15-18; *see also* Exhibit C8. After a day and a half in the infirmary, Stafford walked back to his cell under his own power. *Id*. at 13-24. Stafford also received a cane, more pain medication, and signed up for sick call two or three times a week in the month following the fall. *Id*. at 4-9. He received a physical examination on July 24, 2000 and, on July 31, 2000, it was noted that Stafford had a good range of motion and that he ambulated well. *See* Exhibits C7-8. Throughout the following weeks, Stafford's pain medication and muscle relaxing medications were periodically renewed, and he met with physical therapists for consultations and therapy. *Id*.

However, Stafford considered this treatment inadequate compared to the treatment he assumes he would receive at an outside hospital. Stafford Dep. at 4-9, 16-18. Stafford bases this assumption on the fact that there are too many inmates and not enough time to treat them all. *Id*. at 30:21-22. Stafford concedes that he has been seen by several doctors after the accident, that they were/are available when he needed/needs them, and that the medical professionals in SCI-Graterford tried to help him. *Id*. at 23:2, 23:21, 30:22. Indeed, Stafford continued to receive medication, therapy, and a pamphlet instructing him how to continue his therapy on his own. *Id*. at 33:7-9. Stafford also concedes that the treatment he received in 1996 in the Reading hospital — which he was satisfied with — was the "same procedure" he received in SCI-Graterford: x-ray, pain medication, and therapy. *Id*. at 36:3-4.

7

Stafford nonetheless filed a grievance on July 22, 2000 regarding the condition of the stairs and the medical attention he received after his fall. *See* Exhibit D1. The grievance response from CHCA Knauer addressed his complaint about medical care, but did not mention the condition of the stairs. *See* Exhibit D2. With respect to his medical condition, CHCA Knauer's response indicated that there was no need for medical treatment at a hospital outside of the Institution. *Id*. Specifically, CHCA Knauer indicated that she reviewed Stafford's chart, the x-rays were negative, he walked without signs of distress at discharge and that, after a follow-up examination by Dr. Kulyat, his medication was increased for discomfort. *Id*. CHCA Knauer further noted that Stafford was seen by several doctors on July 24th, 26th, 31st, August 3, and August 7th in response to his complaints. *Id*. CHCA Knauer concluded that Stafford demonstrated a full range of motion and that he had been telling the doctors what he thought his treatment should be rather than listening to the doctors. *Id*.

Stafford sought a second opinion in the form of an appeal to Superintendent Vaughn. *See* Exhibit D3. In his response, Superintendent Vaughn assured Stafford that immediate repairs were made to the steps, but Stafford appealed to the Central Office. *See* Exhibits D4-5. By letter dated August 31, 2000, however, the Central Office rejected Stafford's appeal as procedurally defective and instructed him how to perfect his appeal. *See* Exhibit D6. Stafford failed to avail himself of that opportunity. *See* Declaration of Chief Grievance Review Officer Tshanna Kyler at ¶ 7.

To this day, Stafford still experiences discomfort and, when it cold in the early mornings, he experiences stiffness. Stafford Dep. at 41:18-20.

## III.    ARGUMENT

### A.    SUMMARY JUDGMENT STANDARD

The function of a summary judgment motion is to avoid a trial in cases where it is unnecessary and would only cause delay and expense. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976), *cert. denied*, 429 U.S. 1038 (1977). In evaluating a summary judgment motion, the court may examine the pleadings and other material offered by the parties to determine if there is a genuine issue of material fact to be tried. Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Movant "bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. When moving defendants do not bear the burden of persuasion at trial, as is the case here, they need only point out to the court "that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Once Commonwealth defendants file this properly supported motion, the burden shifts to plaintiff to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Plaintiff "must present affirmative evidence to defeat a properly supported motion for summary judgment," *Anderson v. Liberty Lobby Inc.*, 477 U.S. at 257. Rule 56(e) does not allow Peay to rely merely upon bare assertions, conclusory allegations or suspicions. *Fireman's Ins. Co. v. Du Fresne*, 676 F.2d 965, 969 (3d Cir.1982). He must offer specific facts contradicting the facts averred by the movants, which indicate that there is a genuine issue for trial. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Where the record taken as a whole could not

9

lead a rational trier of fact to find for plaintiff, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**B.      SUMMARY OF THE ARGUMENT**

Stafford's claims are procedurally barred by the statute of limitations and the exhaustion requirement.  Moreover, if this Court reaches the substance of Stafford's claims, Stafford cannot succeed on his Eighth Amendment claims, with respect to the condition of the back A-Block stairs and the medical treatment he received after his July 20, 2000 fall.  Based on the undisputable facts of record, there is no evidence that any of the Commonwealth defendants exhibited deliberate indifference to a serious risk of harm or a serious medical need. Accordingly, this Court should grant summary judgment in favor of the Commonwealth defendants.

**C.      STAFFORD'S CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS**

In actions under 42 U.S.C. Section 1983, federal courts apply the state's statute of limitations for personal injury.  *Sameric Corp. Of Delaware, Inc. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir.1998) (citing *Wilson v. Garcia*, 471 U.S. 261, 276-78 (1985)). Pennsylvania's statute of limitations on personal injury actions is two years.  *Reitz v. County of Bucks*, 125 F.3d 139, 143 (3d Cir.1997) (citing 42 Pa. Cons. Stat. Ann. Section 5524(2)). However, the filing of an application to proceed *in forma pauperis* tolls the statute of limitations, though usually it is accompanied by a copy of the complaint and only if disposition of that application remains pending.  *Baxter v. Consolidated Railroad Corp.*, 552 F.Supp. 394 (E.D.Pa. 1982).

Any claims which stem from Plaintiff's July 20, 2000 fall and the medical care he

received afterwards are barred because the docket indicates that Plaintiff filed this complaint on July 8, 2003, well after the two-year statute of limitations ran. Although plaintiff sought *in forma pauperis* status on June 17, 2002, his petition was denied without prejudice to reassert it in accordance with the terms of the June 17, 2002 Order or to declare his intention to pay the filing fee within 20 days of the date of the Order. Plaintiff did neither. Instead of reasserting his petition in accordance with the terms of the June 17, 2002 order, plaintiff paid a filing fee of $18.68 on July 12, 2002. After that, plaintiff did nothing to further his claim. He did not pay another filing fee and he did not file a complaint until July 8, 2003, almost one year later. Notwithstanding the fact that petitions for *in forma pauperis* status have been held to toll the statute of limitations pending the Court's disposition, as of June 17, 2002, plaintiff's petition for *in forma pauperis* status was no longer pending and, therefore, no longer tolling the statute. The fact that this Court ultimately granted *in forma pauperis* status, though plaintiff never re-petitioned for it, does not mean that the disposition was pending. Given the clear-cut nature of the application of the statute of limitations, plaintiff's claim(s) should be dismissed.

### D.    STAFFORD HAS FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES

Plaintiff has failed to exhaust his administrative remedies, for any claim against Commonwealth defendants, through the Department of Corrections ("DOC") grievance procedure. Title 42 U.S.C. § 1997e(a), the Prison Litigation Reform Act ("PLRA"), requires prisoners to exhaust administrative remedies before initiating a lawsuit pursuant to 42 U.S.C. § 1983. Section 1997e(a) states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  *See also Nyhuis v. Reno*, 204 F.3d 65 (3d Cir. 2000) (holding inmate

action barred by § 1997(e)(a) for failure to exhaust the available administrative remedies: PLRA

amended § 1997(e)(a) to make exhaustion of all administrative remedies mandatory.)  *Id*. at 67.

The Consolidated Inmate Review System is a three-part administrative process involving the

initial grievance, the intermediate level of appeal (if necessary), and the final appeal to the

Central Office (if necessary).  *See Booth v. Churner*, 206 F.3d 289, 293 n.2 (outlining the

grievance review process).

Stafford filed an initial grievance, but the response addressed the medical care he

received, not the condition of the stairs.  Complaint at 2; *see also* Exhibits D1-D2.  He filed an

intermediate level appeal and, although Superintendent Vaughn's response did address the

condition of the stairs, Stafford considered the response inadequate.  *Id*.; *see also* Exhibits D3-

D5.  Stafford appealed to the Central Office for final review but failed to comply with the

provision(s) of DC-ADM 804 on his appeal for final review and, after being informed of this by

letter dated August 31, 2000, he did not attempt to properly re-submit Grievance No. 0897-00 for

final review.  Declaration of Chief Grievance Review Officer Tshanna Kyler at ¶ 7; *see also*

Exhibit D6.  Accordingly, notwithstanding plaintiff's assertions that he perfected his appeal, the

record shows that plaintiff did not exhaust his administrative remedies.  His claims must

therefore be dismissed.  *Nyhuis*.

### E.    STAFFORD'S EIGHTH AMENDMENT RIGHTS WERE NOT VIOLATED

Stafford claims that, although corrections officials knew that the set of stairs had been

decaying, they did not replace the entire staircase.  Complaint at 5.  Stafford also contends that,

although he received medical care, he would have preferred to have received an increased dose

of painkillers and a referral to an outside hospital.  *Id*. at 3.  Given the record, no reasonable

factfinder could find the deliberate indifference necessary for an Eighth Amendment claim.

The Eighth Amendment prohibits any punishment which violates civilized standards of

humanity and decency.  *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997)(citing *Young v.*

*Quinlan*, 960 F.2d 351, 359 (3d Cir. 1992)).  To succeed on his Eighth Amendment claim, an

inmate must prove that he was seriously deprived of life's necessities, and that a prison official

acted with deliberate indifference in subjecting him to that deprivation.  *Id*.  As such, negligence

claims are not actionable under the Eighth Amendment.  *See generally, Farmer v. Brennan*, 511

U.S. 825, 842 (1994) (stating deliberate indifference entails something more than negligence, but

is satisfied by something less than acts or omissions for the very purpose of causing harm or with

knowledge that harm will result).

To succeed on a claim for lack of adequate medical care, " 'a prisoner must allege acts or

omissions sufficiently harmful to evidence a deliberate indifference to serious medical needs."

*Estelle v. Gamble*, 429 U.S. 97 (1976).  The "serious medical need" element is an objective

factor.  The court determines whether a medical need is sufficiently serious if it is one that has

been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay

person would note the need for medical attention.  *Monmouth Cty. Corr. Instit. Inmates v.*

*Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988).

The "deliberate indifference" element is a subjective factor.[1]  Stafford must show that

---

[1]None of Stafford's allegations indicate Commonwealth officials' personal involvement
in the medical decisions at issue, or acquiescence based upon sufficient medical knowledge for
the acquiescence to be knowing.  *Cf. Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1293-94 (3d
Cir. 1997).  Thus, not only are they not deliberately indifferent, but also, they lack the
involvement requisite for liability under § 1983.  *See generally, Rode v. Dellarciprete*, 845 F.2d
(continued...)

each defendant disregarded a known or obvious consequence of his action.  *See generally,*

*Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (deliberate indifference requires the official to

have knowledge of a substantial risk of serious harm, but disregarded that risk by failing to take

reasonable measures to abate it"); *Board of Cty. Comm'srs of Bryan Cty. v. Brown*, 117 S.Ct.

1382, 1391 (1997); *see Singletary v. Pa. Dept. of Corrections*, 266 F.3d 186, 193 n. 3 (3d

Cir.2001) (stating that the general standard for a Section 1983 deliberate indifference claim is set

forth in *Farmer*)); *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

A prisoner, however, "has no right to choose a specific form of medical treatment so long

as the treatment provided is reasonable."  *Iseley v. Dragovich, et al.*, No. CIV.A. 00-4829

(E.D.Pa. April 3, 2003) (citing *Harrison v. Barkley*, 219 F.3d 312, 138 (2d Cir.2000)).  Prison

administrators cannot be found deliberately indifferent for failing to defer to an inmate's

judgment about appropriate diagnostic care when it contradicts the recommendations of the

contracted treating physician(s).  *Durmer v. Carroll*, 991 F.2d 64 (3d Cir.1993).  Moreover,

courts  "must accord substantial deference to the professional judgment of prison administrators,

who bear a significant responsibility for defining the legitimate goals of a corrections system and

for determining the most appropriate means to accomplish them." *Overton v Bazzetta*, 123 S Ct

at 2167; *Bell v. Wolfish*, 441 U.S. 520, 546-548 (1979).

Stafford claims that requests to replace the staircase in the back of A-block were ignored.

In 1998, after a thorough evaluation of all of the staircases in A-E Block, a decision was made to

---

[1](...continued)
1195 (3d Cir. 1988); *City of Canton ,Ohio v. Harris*, 489 U.S. 378, 381 (1989); *Rizzo v. Goode*,
423 U.S. 362, 371 (1976); *Hampton v. Holmesburg*, 546 F.2d 1077, 1082 (3d Cir. 1976).

replace twenty-four (24) of the thirty-one (31) on a "worst-replaced-first" basis.  Hiltner

Declaration at ¶ 8.  Pending the February 2001 replacement, the stairs on A-Block were

monitored and repaired, as needed, on an individual basis.  *Id*. at ¶ 9.  To that end, a step was

welded in April 1997, treads were repaired on two steps on a flight in the front of the block in

early 1998, and a tilted step on the same flight was straightened out in April 1998.  *Id*. at ¶ 10.

Prison officials determined that this was an appropriate means of repairing the stairs, which are

used by prison staff and inmates alike, pending full replacement.  *See Overton.*  Stafford fell on

the steps in question on July 20, 2000, pending replacement.  Though Stafford's accident was

unfortunate, it does not provide the requisite evidence of deliberate indifference.  *See Thomas v.

Zinkel*, 155 F.Supp. 2nd 408, 414 (E.D.Pa. 2001) (stating, though prisoner alleges defendants

knew of unsafe condition and failed to rectify it with certain repairs, and used the constitutional

code words "deliberate indifference", he failed to state any defendants knew and appreciated

substantial risk; at most prisoner alleged a negligence claim, which does not transform into a

constitutional claim solely because it is committed under color of state law) (citing *Estelle,

supra*).  *See also Denz v. Clearfield County*, 712 F.Supp. 65, 66 (W.D.Pa. 1989) (stating it is

obduracy tantamount to willingness that harm occur unnecessarily to a prisoner that implicates

the Eighth Amendment; the occurrence of a slip and fall injury as a result of prison conditions

does not transform into "wanton infliction of unnecessary pain") (citing *Whitley v. Albers*, 475

U.S. 312 (1986) and quoting *Estelle, supra* at 105.)

      Given the undisputable facts of record, Stafford cannot succeed on his Eighth

Amendment claim when prison officials had already set into motion a massive renovation project

to address precisely what plaintiff was allegedly complaining about before his accident.  This is

true especially because, pending completion, necessary repairs were made upon individual steps

15

and because prison officials were cognizant that inmates and fellow prison officials were using the same stairs.  Because no reasonable factfinder could determine that Commonwealth defendants were deliberately indifferent to the condition of the stairs in the back of A-Block, this Court should grant summary judgment as to these claims.

Moreover, Stafford does not claim that he was denied medical treatment; rather, he complains that the medical treatment he received was inadequate and that this was the result of deliberate indifference.  CHCA Knauer is the only defendant in the medical department.  Her duties are as an administrator, not a nurse, and she is required to rely upon the medical professionals, which the contract medical provider provides at SCI-Graterford.  Knauer Dec. at ¶ 2.  She is not involved in the medical decision of whether a referral to a specialist is approved or not.  *Id*. at ¶ 3. *Compare Durmer, supra*.

Because Stafford cannot present even a scintilla of evidence that any of the Commonwealth defendants were deliberately indifferent to this serious medical needs, this Court should grant summary judgment on those claims.

### F.    COMMONWEALTH DEFENDANTS LACK THE PERSONAL INVOLVEMENT REQUIRED UNDER SECTION 1983 CLAIMS.

A plaintiff in a Section 1983 action must allege and prove that an individual defendant personally performed, directed, or knowingly permitted an illegal act.  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207, 1208 (3d Cir. 1988).  Individuals cannot be held liable for civil rights violations without either direct involvement in or knowledge of and acquiescence in the alleged constitutional violation.  *Id.*; *Hodgin v. Roth*, 536 F. Supp. 454, 460 (E.D. Pa. 1982); *Hampton v. Holmesburg Prison Officials*, 546 F.2d 1077, 1082 (3d Cir. 1976).  Traditional concepts of respondeat superior do not apply to actions brought under Section 1983.  *Monell v. New York*

*City Dept. of Social Services*, 436 U.S. 658, 691 (1978).  An "affirmative link" between the injury and each of the defendants' conduct is essential to the showing of causation.  *Rizzo v. Goode*, 423 U.S. 362, 371 (1976).

To sustain a § 1983 claim against any defendant, plaintiff must prove some affirmative conduct on the defendant's part contributed to the constitutional violation.  *Id.*  This necessary involvement can be shown in one of two ways: "through allegations of personal direction or actual knowledge and acquiescence."  *Rode*; *City of Canton, Ohio v. Harris*, 489 U.S. 378, 381 (1989) (defendants must be the "moving force [behind] the constitutional violation"), *Hampton,* 546 F.2d at 1082 (3d Cir. 1976).   A defendant's conduct must have a close causal connection to plaintiff's injury for liability to attach under 1983.  *Martinez v. California*, 444 U.S. 277, 285 (1980).

In this case, Stafford alleges that CHCA Knauer and Superintendent Vaughn failed to act favorably to his initial grievance and intermediate level grievance appeal.  As a matter of law, such failure to act are not constitutional violations.  *See Rauso v. Vaughn*, 2000 WL 873285 (E.D. Pa.) (failure of prison official to act favorably on inmate's grievance is not itself a constitutional violation) (citing *Caldwell v. Hall*, 2000 WL 343229 (E.D. Pa.)); *Flanagan v. Shively*, 783 F.Supp. 922, 931 (M.D. Pa. 1992), *aff'd*, 980 F.2d 722 (3d Cir.), *cert. denied*, 510 U.S. 829 (1983).  Moreover, Stafford does not allege, and cannot show, that Commonwealth defendants had any involvement in the events complained of or ever had any knowledge at any time of plaintiff's claims.  *Caldwell*, 2000 WL 343229 at *2; *see also Bey v. Pennsylvania Dept. of Corrections*, 98 F.Supp.2d 650 (E.D. Pa. May 31, 2000) (dismissing plaintiff's claim against prison official because there was no evidence that prison official participated in the incidents giving rise to misconducts).  Rather, Stafford simply alleges that the stairs were decayed, that

17

prison officials did not address the problem to his satisfaction, that he fell anyway, and that he did not receive medical care to his satisfaction. Accordingly, plaintiff failed to state a claim under Section 1983 against Commonwealth, for any claims, because they lack the requisite involvement.

> ### G.    COMMONWEALTH DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY FROM DAMAGES.

Once Commonwealth defendants claim qualified immunity, the Court must first assess whether plaintiff's allegations are sufficient to establish the violation of a constitutional or statutory right at all. *Conn v. Gabbert*, 526 U.S. 286, 290 (1999); *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5 (1998). Should this Court determine that plaintiff has crossed that threshold as to his Eighth Amendment claims, it must next determine whether those rights were clearly established and whether the defendants' conduct was nonetheless 'objectively reasonable' in light of that challenge. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Thus, "the qualified immunity doctrine 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Orsatti v. New Jersey State Police*, 71 F.3d 480 (3d Cir.1995) (quoting *Malley v. Briggs*, 475 U.S. 335, 335 (1986)).

"The relevant, dispositive inquiry is whether it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 121 S.Ct. 2151, 2156 (2001) (citing *Wilson v. Layne*, 526 U.S. 603 (1999)). If the court determines that the only conclusion a rational jury could reach is that reasonable prison officials would disagree about the legality of the challenged conduct, summary judgment is appropriate. *Anderson,* 483 U.S. at 638. This is true because of the broad concerns for avoiding the social costs of the underlying litigation and for ensuring and preserving government effectiveness.

Since a reasonable prison official in the position of Commonwealth defendants <u>could</u>

18

have reasonably believed that their actions were lawful in light of existing law and facts known

to them, based upon their personal knowledge, summary judgment should be granted.  The

inquiry is whether, under the circumstances alleged, Commonwealth defendants could have

reasonably believed that they did not violate plaintiff's constitutional rights.  *Anderson v.*

*Creighton*, 483 U.S. at 639.  Since the focus is "under the circumstances alleged," it is plaintiff's

obligation to show that the "contours" of the right are "sufficiently clear" so that a "reasonable

official would understand what he is doing violates that right."  *Id*. at 640.

> Because qualified immunity shields government actors in all but exceptional
> cases, courts should think long and hard before stripping defendants of immunity
> .... 'If case law, in factual terms, has not staked out a bright line, qualified
> immunity almost always protects the defendant.' . . . For qualified immunity to be
> surrendered, pre-existing law must dictate, that is truly compel (not just suggest or
> allow or raise a question about) the conclusion for every like-situated, reasonable
> government agent that what defendant is doing violates federal law in the
> circumstances.

*Lassiter v. Alabama A & M Univ.*, 28 F.3d 1146, 1148-49 (11th Cir. 1994) (en banc) (citation

omitted).  Reasonable persons in Commonwealth defendants' positions could have believed that

their actions did not violate any of plaintiff's clearly established rights, especially in light of the

holding by the United States Supreme Court in *Saucier*.  121 S.Ct. 2151.

All of the Commonwealth defendants held supervisory positions in the Institution's

administration, maintenance department and medical department.  With respect to the

Commonwealth defendants in the administration and maintenance departments, the problem with

the stairs was recognized in 1998 and a massive renovation project was planned, budgeted, and

put into place.  Until then, repairs were completed as before, on a case-by-case basis.  With

respect to CHCA Knauer in the medical department, she responded to Stafford's grievances by

reviewing the medical records and the recommendations within them, which she does in the

normal course of her duties.  Any reasonable officials in the Commonwealth defendants'

19

positions could have believed that their decisions and actions did not violate any of Stafford's

clearly established rights.  *Saucier.*

        If the Court determines that the only conclusion a rational jury could reach is that

reasonable prison officials would disagree about the legality of the challenged conduct, summary

judgment is appropriate.  *Anderson,* 483 U.S. at 638.  Accordingly, Commonwealth defendants

are entitled to qualified immunity from damages in this case.

## IV.     CONCLUSION

        For all of the reasons stated above, this Court should grant summary judgment in favor of

Commonwealth defendants.

                                        GERALD J. PAPPERT
                                        ATTORNEY GENERAL

                                BY:   /s/ Patrick J. McMonagle
                                        Patrick J. McMonagle
                                        Deputy Attorney General
                                        Identification No. 83890

Office of Attorney General              Susan J. Forney
21 S. 12th Street, 3rd Floor            Chief Deputy Attorney General
Philadelphia, PA  19107-3603            Chief, Litigation Section
Telephone No. (215) 560-2933
Fax:  (215) 560-1031

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DEON C. STAFFORD                          :        CIVIL ACTION
                                          :
            v.                            :
                                          :
DONALD T. VAUGHN (SUPERINTENDENT):
MANNY ARROYO (DEPUTY                      :
SUPERINTENDENT), DAVID                    :
DIGUGLIELMO (DEPUTY                       :
SUPERINTENDENT), GEORGE HILTNER           :
(SUPERVISOR MAINTENANCE), MRS.            :
KNAUER (ADMINISTRATION                    :
SUPERVISOR), MR. MCSURDY (FIRE            :
INSPECTOR SUPERVISOR)                     :        NO.  02-3790

### TABLE OF EXHIBITS OF COMMONWEALTH DEFENDANTS

Exhibit A.    Deposition Transcript: Deon C. Stafford
Exhibit B.    Declaration of Facilities Maintenance Manager III, George Hiltner
              B1    June/July 1999 - Fire & Safety Inspection Report
              B2    Maintenance Work Order ("MWO") No. 3547, dated 3/5/97
              B3    Listing for MWO No. 3547
              B4    MWO No. 00384, dated 1/7/98
              B5    MWO No. 00400, dated 1/7/98
              B6    MWO No. 02272, dated 4/7/98
              B7    Listing for MWOs Nos. 00384, 00400 and 02272
              B8    February Cost Report for the A-Block stair replacement project
Exhibit C.    Declaration of Corrections Health Care Administrator Julia Knauer
              C1    Initial Reception Screening/Health Assessment
              C2    Report of Slip/Falls from 12/97 - 6/00
              C3    Medical Incident/Injury Reports
              C4    Medical Incident/Injury Report for Deon Stafford, dated 7/20/00
              C5    X-Ray Report for Deon Stafford, dated 4/29/99
              C6    X-Ray Report for Deon Stafford, dated 7/20/00
              C7    Progress Notes
              C8    Physician's Orders
Exhibit D.    Declaration of Chief Grievance Review Officer Tshanna Kyler
              D1    Official Inmate Grievance GRA-0897-00
              D2    Official Inmate Grievance Response (Initial Review)
              D3    Inmate Appeal from Initial Review
              D4    Superintendent Vaughn's Disposition of Inmate Appeal
              D5    Grievance Appeal to Central Office
              D6    Final Review of GRA-0897-00

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DEON C. STAFFORD                          :        CIVIL ACTION
                                          :
            v.                            :
                                          :
DONALD T. VAUGHN (SUPERINTENDENT):
MANNY ARROYO (DEPUTY                      :
SUPERINTENDENT), DAVID                    :
DIGUGLIELMO (DEPUTY                       :
SUPERINTENDENT), GEORGE HILTNER           :
(SUPERVISOR MAINTENANCE), MRS.            :
KNAUER (ADMINISTRATION                    :
SUPERVISOR), MR. MCSURDY (FIRE            :
INSPECTOR SUPERVISOR)                     :        NO.  02-3790

## CERTIFICATE OF SERVICE

I, Patrick J. McMonagle, Deputy Attorney General, hereby certify that a true and correct

copy of the Commonwealth Defendants' Motion for Summary Judgment was filed electronically

and is available for viewing and downloading from the ECF system as of August 6, 2004.  I

further certify that a true and correct copy of said document was mailed on August 6, 2004,

postage prepaid, to:

Deon Stafford, DD-4637
State Correctional Institution at Graterford
P.O. Box 244
Graterford, PA 19426

                                GERALD J. PAPPERT
                                ATTORNEY GENERAL

                        BY:   /s/ Patrick J. McMonagle
                                Patrick J. McMonagle
                                Deputy Attorney General
                                Identification No. 83890

Office of Attorney General              Susan J. Forney
21 S. 12th Street, 3rd Floor            Chief Deputy Attorney General
Philadelphia, PA  19107-3603            Chief, Litigation Section
Telephone No. (215) 560-2933