IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DEON C. STAFFORD, MR. SR** : | | **CIVIL ACTION** |
| Plaintiff, : | | |
| : | | |
| vs. : | | |
| : | | |
| **DONALD T. VAUGHN** : | | **NO. 02-3790** |
| **(SUPERINTENDENT), MANNY ARROYO** : | | |
| **(DEPUTY SUPERINTENDENT), DAVID** : | | |
| **DIGUGLIELMO (DEPUTY** : | | |
| **SUPERINTENDENT), GEORGE** : | | |
| **HILTNER (SUPERVISOR** : | | |
| **MAINTENANCE), KNAUER, MRS., and** : | | |
| **MCSURDY, MR.** : | | |
| Defendants. : | | |

**ORDER AND MEMORANDUM**

**O R D E R**

**AND NOW**, this 17th day of May, 2005, upon consideration of Commonwealth Defendants' Motion for Summary Judgment (Document No. 24, filed August 6, 2004), and Plaintiff's Answer to Commonwealth Defendants Motion for Summary Judgment (Document No. 27, filed September 9, 2004), for the reasons set forth in the accompanying Memorandum, **IT IS ORDERED** as follows:

  1. Commonwealth Defendants' Motion for Summary Judgment is **GRANTED**;

  2. **JUDGMENT IS ENTERED** in **FAVOR** of defendants, Donald T. Vaughn, Manny Arroyo, David DiGuglielmo, George Hiltner, Mrs. Knauer, and Mr. McSurdy,[1] and **AGAINST** plaintiff, Deon C. Stafford; and,

---

[1] The Court sua sponte will amend the caption of this case to identify, as do defendants in their submissions, defendant "Knaur" as "Knauer," and defendant "Mscurdy" as "McSurdy."

3. The Clerk of Court shall **MARK** the case **CLOSED FOR STATISTICAL PURPOSES**.

## MEMORANDUM

### I. INTRODUCTION

Pro se plaintiff Deon Stafford is an inmate at the State Correctional Institution at Graterford, Pennsylvania ("SCI-Graterford"). In this action for compensatory and injunctive relief under 42 U.S.C. § 1983, plaintiff alleges that defendants' deliberate indifference with respect to the condition of a step on which he fell in July, 2000, and the medical treatment he received after his fall violated his rights under the Eighth and Fourteenth Amendments of the U.S. Constitution. The defendants were at all relevant times Department of Corrections employees at SCI-Graterford: Superintendent Donald T. Vaughn, Deputy Superintendent Manny Arroyo, Deputy Superintendent David DiGuglielmo, Maintenance Supervisor George Hiltner, Corrections Health Care Administrator Knauer, and Fire Inspector Supervisor Mr. McSurdy. (Complaint at 4).

Presently before the Court is Commonwealth Defendants' Motion for Summary Judgment, in which defendants argue that they are entitled to summary judgment because, inter alia, plaintiff has presented no evidence that they were deliberately indifferent to the condition of the stairs on which he fell and to the medical treatment he received following his fall in violation of the Eighth Amendment. Plaintiff filed a response to the Motion. After reviewing the parties' submissions and the record in this case, the Court grants defendants' motion for

summary judgment and enters judgment in favor of defendants and against plaintiff.[2]

## II. BACKGROUND

### A. Facts

The facts necessary to the Court's decision, taken from the record and the parties' submissions, are set forth below.

#### 1. Accident of July 20, 2000 and Medical Treatment for Injuries

On July 20, 2000, plaintiff was walking down the stairs behind A-Block of SCI-Graterford when one of the steps collapsed under him. Plaintiff fell and sustained injuries to his neck and back. After his accident, plaintiff was "strapped in something, some kind of device," and was taken to the prison dispensary where he was x-rayed by prison medical personnel. (Stafford Dep. at 26:16-18; attached as Exhibit A to Commonwealth Defendants' Motion for Summary Judgment; see also Commonwealth Defendants' Motion For Summary Judgment at Exhibit C6). Plaintiff stated that following his fall, "Dr. Bekkon [sic] was saying to leave me in the dispensary," but another doctor present at the dispensary "was furious. [That doctor] said a person with the magnitude of this fall should be taken to the hospital." (Stafford Dep. at 27:6-8, 27:16-18).

After his accident, plaintiff was taken to the infirmary where he remained for approximately one and one-half days. (Stafford Dep. at 28:12-13). Plaintiff was given Motrin and a cane. (Stafford Dep. at 29:4). He subsequently signed up for sick call two or three times per week. (Stafford Dep. at 29:9-11). In addition, plaintiff asked prison officials to authorize an

---

[2] In reaching its decision, the Court has construed pro se plaintiff's submissions liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972).

evaluation by a medical professional from outside SCI-Graterford but this did not occur. (Stafford Dep. at 30:5-6; 41:2). Plaintiff also alleges that some time after his accident he told defendant Vaughn that he "would like to go to the hospital and that [he] would like for the stairs to be repaired," and that Vaughn said "he'd see what he could do" in response to plaintiff's requests. (Stafford Dep. at 31:12-16). Although plaintiff was not seen by outside medical personnel, he was examined by other doctors at SCI-Graterford after his stay in the infirmary. (Stafford Dep. at 32:21-33:1). Plaintiff considered his medical treatment inadequate, but admitted that doctors, nurses, and physicians' assistants were available to him when he needed or wanted them. (Stafford Dep. at 23:18-21).

The medical records submitted with Defendants' Motion for Summary Judgment establish that plaintiff received extensive medical treatment after his fall. He was immediately taken by stretcher to the infirmary where he remained for one and a half days. At the infirmary, he was seen by a physician and other medical personnel and was x-rayed. The x-rays of his pelvis, lumbar spine and cervical spine were essentially normal. After release from the infirmary, defendant was examined and treated by several doctors for injuries related to the accident on numerous occasions.

Plaintiff submitted a grievance regarding his medical treatment on July 22, 2000. Defendant Knauer reviewed the medical records and responded to the grievance on August 7, 2000. In her response, she noted that the x-rays were negative, that he was discharged from the infirmary to the Block on July 21, 2000, at which time he "ambulated without signs of distress." Knauer goes on to state that, after he complained of pain, his medication was increased and he was seen by several doctors for his accident-related complaints on July 24, July 26, July 31,

August 3, and August 7, 2000. The records of those examinations disclosed "full range of motion." In conclusion, defendant Knauer stated in response to the grievance that "your medical follow-up has been appropriate and follows DOC policies and procedures."

### 2. Condition of Stairs at Rear of A-Block

Plaintiff arrived at SCI-Graterford in 1996. Before July 20, 2000, plaintiff complained to SCI-Graterford officials that the stairs behind A-Block had been decayed for some time. Defendants Vaughn, Arroyo, DiGuglielmo, and McSurdy were aware of the condition of these stairs through complaints, prior accidents, work orders, or inspection.[3] (Commonwealth Defendants' Motion for Summary Judgment at 4). Plaintiff alleges that defendant Hiltner became aware of the condition of these stairs three months before July 20, 2000. (Stafford Dep. at 15:1-2).

In 1998, a mason inspected the stairs in SCI-Graterford housing units A through E. (Hiltner Declaration at ¶¶ 7-8, attached as Exhibit B to Commonwealth Defendants' Motion for Summary Judgment). The mason determined that most of these stairwells were "worn," and corrections officials subsequently decided to replace the "worn" stairwells in housing units A through E. (Hiltner Declaration at ¶¶ 7-8). The stair replacement project was prioritized such that the stairs in the worst condition – the stairs in E-Block – were replaced first. (Hiltner Declaration at ¶ 9). Replacement of the E-Block stairs was completed by September, 2000, replacement of the D-Block stairs was completed by November, 2001, and replacement of the A-

---

[3] Defendants' records show that there were fifty-three (53) documented falls on various stairs at SCI-Graterford between December, 1998, and June, 2000, six (6) of which occurred on the A-Block stairs. According to the incident reports of these six falls, only plaintiff's fall was attributable to a condition of the stairs.

Block stairs was completed in February, 2001.  (Hiltner Declaration at ¶ 9).  Prison officials made repairs to the A-Block stairs pending the stairs' replacement in February, 2001: a step was welded in April, 1997, the treads on two steps were repaired in early 1998, and a tilted step was straightened in April, 1998.  (Hiltner Declaration at ¶¶ 10, 13).

### B. Procedural History

Plaintiff filed a grievance on July 22, 2000, concerning the condition of the A-Block stairs on which he fell and the medical treatment he received after his fall.  After receiving defendant Knauer's response to his grievance, plaintiff filed an intermediate appeal to defendant Vaughn and then a final appeal to the Central Office of the Department of Corrections.  The Central Office rejected plaintiff's appeal as procedurally defective and provided him with information regarding perfection of his appeal.

Proceeding pro se, plaintiff filed a Complaint and request to proceed in forma pauperis on June 17, 2002.  On June 19, 2002, the Court denied by Memorandum and Order plaintiff's request to proceed in forma pauperis without prejudice to his right to reassert it in accordance with the terms of that Order or to declare his intention to proceed by paying a partial filing fee of $18.68 within twenty days of the date of that Order.  Plaintiff paid his $18.68 partial filing fee on July 12, 2002.  However, the fact that plaintiff had paid his partial filing fee on July 12, 2002 was not brought to the Court's attention until July 7, 2003.  On July 8, 2003, the Court granted plaintiff's motion to proceed in forma pauperis and directed that the Complaint be filed.

On September 9, 2003, defendants moved to dismiss plaintiff's Complaint.  The Court

denied defendants' motion by Order and Memorandum dated February 23, 2004.[4] Thereafter, plaintiff filed a Motion to Compel Discovery on July 13, 2004. After reviewing defendants' response to plaintiff's discovery motion, the Court issued an Order on July 30, 2004 and an Order and Memorandum on January 20, 2005, directing defendants to provide plaintiff with unredacted copies of all reports and other records covering plaintiff's accident, the six prior accidents involving the steps in question, and maintenance and repair records covering the steps in question for three years before and one year after plaintiff's accident. Defendants complied with the Orders and state that they provided all discoverable documents and information to plaintiff.

On August 6, 2004, defendants filed the instant Motion for Summary Judgment. Plaintiff filed his response on September 9, 2004. The Court delayed ruling on the summary judgment motion pending resolution of plaintiff's numerous discovery requests.

## III. DISCUSSION

### A. Summary Judgment Standard

"[I]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law[,]" summary judgment should be granted. Fed.R.Civ.Proc. 56(c). The summary judgment determination is "the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any

---

[4] Beginning February 24, 2004, the Court endeavored to appoint counsel for plaintiff pursuant to the Prisoner Civil Rights Attorney Panel Program. Because three attorneys declined to accept the case on the merits, the Court, by Order dated November 2, 2004, directed the Deputy Clerk to discontinue efforts to appoint counsel.

genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

A court may grant summary judgment if the non-moving party fails to make a factual showing "sufficient to establish an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Cartrett, 477 U.S. 317, 322 (1986). In making this determination, the non-moving party is entitled to all reasonable inferences. Pollock v. Am. Tel. & Tel. Long Lines, 794 F.2d 860, 864 (3d Cir. 1986). A court may not, however, make credibility determinations or weigh the evidence in making its determination at the summary judgment stage. Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150 (2000).

**B.  Statute of Limitations**

Defendants argue that they are entitled to summary judgment on the ground that plaintiff's complaint in this case was filed after expiration of the two-year statute of limitations applicable to actions brought under § 1983. The Court rejects this argument.

By Memorandum and Order dated June 19, 2002, plaintiff was given twenty days to notify the Court that he wanted to proceed with the case and obligate himself to pay the $150 filing fee. Plaintiff did not provide formal notice of his intent to proceed with the case and instead paid the partial filing fee of $18.68 as set forth in the June 19, 2002 Memorandum and Order. The receipt for this payment is dated July 12, 2002.

Under the Prison Mailbox Rule, the date of the filing of plaintiff's partial filing fee is the date on which the payment was mailed from SCI-Graterford. Although there is no evidence of the mailing date of the $18.68 partial filing fee in the record, it appears that this payment was

8

placed in the mail – the effective date for purposes of this case – on or about July 9, 2002, within the twenty day period specified in the June 19, 2002 Memorandum and Order. The Court will treat the payment of the partial filing fee as notice that plaintiff intended to proceed with this case.

Further, as noted in the Court's Order of July 8, 2003, the fact that plaintiff paid his partial filing fee on July 12, 2002 was not brought to the Court's attention until July 7, 2003, at which time the Court granted plaintiff's application for leave to proceed in forma pauperis and directed that the Complaint be filed. This belated notice of the receipt of plaintiff's partial filing fee accounts for the fact that plaintiff's Complaint was filed on July 8, 2003, instead of on or about July 9, 2002. Based on the foregoing, the Court will toll the statute of limitations during the period from on or about July 9, 2002 – the approximate date on which plaintiff deposited his partial filing fee in the mail at SCI-Graterford – to July 8, 2003. See Richardson v. Diagnostic Rehab Center, 836 F. Supp. 252 (E.D.Pa. 1993) (limitations period may be equitably tolled if the plaintiff complies with a Court Order regarding refiling of an in forma pauperis motion). Accordingly, the Court concludes that the Complaint was timely filed and plaintiff's action is not barred by the statute of limitations.

The Court further notes that defendants did not raise the affirmative defense of the statute of limitations in their Answer to the Complaint. Thus, this affirmative defense was waived.

**C. Eighth Amendment Claims**

Because resolution on the merits of plaintiff's Eighth Amendment claims regarding his the condition of the A-Block stairs on which he fell and the medical treatment he received following his fall is dispositive in this case, the Court will not address defendants' claim that they

are entitled to summary judgment on the grounds that plaintiff failed to exhaust administrative remedies and that defendants are entitled to qualified immunity.

### 1. Condition of A-Block Stairs

Plaintiff argues that the failure of defendants Vaughn, Arroyo, DiGuglielmo, Hiltner, and McSurdy to remedy the unsafe condition of the A-Block stairs on which he fell constitutes a violation of his Eighth Amendment rights.[5] The Court rejects this argument and grants these defendants' motion for summary judgment on this claim.

To state an Eighth Amendment claim premised on prison conditions, a prisoner must allege that the conditions of which he complains are sufficiently serious and that prison officials acted with deliberate indifference toward those conditions. Wilson v. Seiter, 501 U.S. 294 (1991). To prove deliberate indifference based on prison officials' failure to repair a particular condition, a prisoner must allege that the officials acted with a "culpable state of mind." Id. at 297. "Only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." Id.

The existence of malfunctioning or broken prison equipment – even where prison officials have knowledge of the problem – does not itself violate the Eighth Amendment. Warren v. Missouri, 995 F.2d 130 (8th Cir. 1993); Bibbs v. Armontrout, 943 F.2d 26 (8th Cir. 1991). Prison officials who take reasonable steps to remedy unsafe conditions within a prison are not deliberately indifferent toward those conditions. E.g., Johnson v. Williams, 768 F. Supp. 1161, 1166 (E.D. Va. 1991) (granting summary judgment for prison officials on prisoner's

---

[5] In his Complaint, plaintiff does not allege an Eighth Amendment claim against defendant Knauer with respect to the condition of the A-Block stairs. (Complaint at 4).

Eighth Amendment claim premised on damaged prison windows where officials "continually worked" to repair windows and took additional measures during ongoing repairs to prevent additional harm resulting from windows); see also Blackiston v. Vaughn, No. 95-3740, 2002 U.S. Dist. LEXIS 16261, at *11 (E.D. Pa. Aug. 20, 2002) (declining to find "deliberate indifference" on part of prison official where official had taken appropriate steps to repair malfunctioning utility systems upon which plaintiff based Eighth Amendment claim).

Turning to this case, the Court need not consider the question whether the condition of the stairs at issue was a "serious condition" for Eighth Amendment purposes because, reviewed against the factual background, plaintiff failed to present any evidence that defendants Vaughn, Arroyo, DiGuglielmo, Hiltner, and McSurdy acted with deliberate indifference toward the condition of the A-Block stairs.

Plaintiff states that prior to his July 20, 2000 accident, he complained to these defendants on many occasions concerning the deteriorating conditions of the stairs. In response, defendants state (1) that they began working to replace the prison stairs in 1998, well before plaintiff's accident, and (2) that they made necessary repairs to individual steps on the A-Block stairs pending completion of the SCI-Graterford stair replacement project. (Hiltner Declaration at ¶¶ 6, 8, 10, 13). In addition, defendants state in their March 7, 2005 letter to the Court and plaintiff that the stairs at issue were being used by both inmates and prison officials. The fact that these stairs were used by both prisoners and prison officials undercuts plaintiff's claim that defendants acted with deliberate indifference toward the condition of these stairs. See Jones v. Morris, 769 F. Supp. 274, 277-78 (N.D. Ill. 1989) (declining to find deliberate indifference on part of prison officials where officials themselves used the allegedly dangerous scaffolding upon which

11

prisoner based Eighth Amendment claim).

Given that the SCI-Graterford stair replacement project was already in progress at the time of plaintiff's accident and that defendants took specific action to repair individual steps in A-Block pending the replacement of those stairs, the Court concludes that plaintiff fails to demonstrate that defendants acted with deliberate indifference regarding the condition of those stairs. Accordingly, the Court grants summary judgment in favor of defendants Vaughn, Arroyo, DiGuglielmo, Hiltner, and McSurdy with respect to plaintiff's claim that their failure to address the condition of the A-Block stairs at SCI-Graterford violated his Eighth Amendment rights.

### 2. Post-Accident Medical Treatment

Plaintiff alleges in the Complaint that the medical treatment he received after his accident establishes that defendant Knauer was deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights.[6] This claim is rejected.

In order to establish a violation of the Eighth Amendment with respect to medical care, a prisoner must show that prison officials were deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976); Farmer v. Brennan, 511 U.S. 825, 832 (1994). A medical need is "serious" if it "is one that has been diagnosed by a physician as requiring treatment or is one so obvious that a lay person would easily recognize the necessity of treatment." Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). "Deliberate indifference" requires a subjective showing that a prison official knows of and disregards that risk of harm; "the official must be both aware of facts from which the inference

---

[6] Defendant does not assert an Eighth Amendment claim against defendants Vaughn, Arroyo, DiGuglielmo, Hiltner, or McSurdy with respect to the medical treatment he received after his fall. (Complaint at 4).

could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." Farmer, 429 U.S. at 837.

A plaintiff must show more than mere negligence or inadvertent failure to provide medical care in order to state a claim for deliberate indifference. Estelle, 429 U.S. at 104-05. Prison officials have considerable latitude in the diagnosis and treatment of inmates' medical conditions. Parham v. Johnson, 126 F.3d 454, 458 (3d Cir. 1997). "Where a plaintiff has received some care, inadequacy or impropriety of the care that was not given will not support an Eighth Amendment claim." Norris v. Frame, 585 F.2d 1183, 1186 (3d Cir. 1978). A difference of opinion over the medical treatment received by an inmate is not actionable under the Eighth Amendment. Monmouth County, 834 F.2d at 346; see also Iseley v. Dragovich, No. 00-4839, 2003 U.S. Dist. LEXIS 5483, *12 (E.D. Pa. Apr. 3, 2003) ("'a prisoner has no right to choose a specific form of medical treatment,' so long as the treatment provided is reasonable.") (citing Harrison v. Barkley, 219 F.3d 132, 138-140 (2d Cir. 2000)).

For a plaintiff to maintain a § 1983 claim against a state official, the state official must have had personal involvement in the alleged constitutional violation. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). That a defendant holds a supervisory position does not, without more, support a claim under § 1983, as § 1983 does not support claims of constitutional violations based on the theory of respondeat superior or vicarious liability. Durmer v. O'Carroll, 991 F.2d 64, 69 n. 14 (3d Cir. 1993).

The Court will now turn to plaintiff's claim that defendant Knauer was deliberately indifferent to his medical needs in violation of the Eighth Amendment. Prison administrators "who are not physicians cannot be considered deliberately indifferent simply because they failed

to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." Durmer, 991 F.2d at 69.  Likewise, "health care administrators cannot be found deliberately indifferent when an inmate is receiving care from a doctor." Thomas v. Zinkel, 155 F. Supp. 2d 408, 413 (E.D. Pa. 2001) (holding specifically that Knauer cannot be held liable under § 1983 solely by virtue of her supervisory role); see also McAleese v. Owens, 770 F. Supp. 255, 262-63 (M.D. Pa. 1991) (granting summary judgment for prison health care administrator because he was not a physician and not in position to assess prison doctor's treatment decisions).

Plaintiff filed a grievance with defendant Knauer on July 22, 2000, to which she responded on August 7, 2000.  In her response, she detailed his medical treatment, which was extensive and concluded by stating "your medical follow-up has been appropriate and follows DOC policies and procedures."

Although plaintiff has stated that he disagrees with his medical treatment, he has failed to demonstrate that defendant Knauer, in her supervisory role, was deliberately indifferent to his medical needs.  To the contrary, the record discloses that the medical staff at SCI-Graterford provided immediate medical treatment to plaintiff, and continued to do so, and that defendant Knauer, in her supervisory role, responded to plaintiff's grievance in an appropriate fashion. There is absolutely no evidence that defendant Knauer was deliberately indifferent to plaintiff's medical needs.  Accordingly, the Court grants defendant Knauer's Motion for Summary Judgment with respect to plaintiff's Eighth Amendment claim against her. Zinkel, 155 F. Supp. 2d at 413.

IV.  CONCLUSION

       For the foregoing reasons, the Court grants defendants' Motion for Summary Judgment and enters judgment in favor of defendants and against plaintiff.

                                      **BY THE COURT:**

                                 **/s/ Hon. Jan E. DuBois**
                                   **JAN E. DUBOIS, J.**